## Edmonds v. Cooper.

*Practice—Execution—Ca. sa.—Acts of April 13, 1807, and June 16, 1836.*
While the practice is to issue a *ca. sa* and *fi. fa.* together, the *ca. sa.* may issue alone.
Acts of April 13, 1807, § 5, 4 Sm. Laws, 477, and June 16, 1836, P. L. 755, considered.

Rule for *ca. sa.* C. P. No. 4, Phila. Co., Sept. T., 1924, No. 3698.

*Wolf, Block, Schorr & Solis-Cohen,* for plaintiff.

*George S. Russell, amicus curiæ.*

FINLETTER, P. J., March 9, 1928.—The prothonotary has declined to issue a *pluries* writ of *capias ad satisfaciendum* unless it is accompanied by a writ of *fieri facias.* This rule is taken upon him to show cause why he should not issue the *pluries ca. sa.* alone.

The docket entries show that the plaintiff has already caused three such pairs of simultaneous writs to issue, all of which have been returned *nulla bona* and *n. e. i.*

Edmonds v. Cooper.

There is no statute nor any rule of common law forbidding the issuance of the *ca. sa.* in the first instance and alone if the defendant has no property.

The Act of April 13, 1807, § 5, 4 Sm. Laws, 477, and the Act of June 16, 1836, P. L. 755, are the only statutes that have to do with the subject. The former provided that "no writ of *capias ad satisfaciendum* shall *issue* in any case where the defendant may have real or personal estate to satisfy the plaintiff's demand." The Act of 1836 forbids a *ca. sa.* to be *executed* where the defendant has property.

Under both statutes, the practice grew up to issue a *fi. fa.* and *ca. sa.* together, and to require the defendant upon call to disclose any property he had. Advantage could then be taken of the disclosure by execution of the *fi. fa.* This, no doubt, was the practical reason for the simultaneous use of the two writs. From long-continued following of the practice, the idea grew up that the association of the writs is compulsory. The practice was expressly authorized by the Act of 1836, § 27. But this was permissive, not mandatory, and in aid of the plaintiff and of the previously existing practice. It was not prohibitory of the solitary *ca. sa.*: Allison v. Rheam, 3 S. & R. 139; Winder v. Smith, 6 W. & S. 424; Stofflet v. Kinsel, 24 Montg. Co. Law Repr. 26; Majeski v. Duzinski, 5 D. & C. 22.

The Act of 1836, in its 19th section, provided the order in which the person and estate of the defendant could be taken in execution. The personal estate first, then the real estate, and the person only when the defendant was without property. But there is nothing in the provision for this order that would require the plaintiff to demonstrate the fact that the defendant was without property by issuing process against real and personal estate before attempting to take the person. Whether accompanied by the *fi. fa.* or not, the *ca. sa.* could not be executed if a disclosure of property were made. But if the defendant has no property, the *ca. sa.* may issue and be executed in the first instance. Said Gibson, J., in Winder v. Smith: "The statute now in force (the Act of 1836) does not prohibit a *capias* in the first instance. Such an arrest was held to be unlawful in Allison v. Rheam only because the *capias* was prohibited under the circumstances, and, therefore, void." That is because the Act of 1807 prohibited the *issuance*. All that the Act of 1836 forbids is its execution if the defendant disclose property. Indeed, if he declines to disclose it, the legality of the *ca. sa.* may not afterwards be questioned, even if in fact the defendant had property. "The creditor might call upon the debtor for the proper information; and it is not to be doubted that if the latter refused to give it, he would have been estopped from showing the truth of the case afterwards in order to make the creditor a trespasser:" Gibson, J., in Winder v. Smith, *supra*.

The prothonotary need have no fear of personal liability, for the court has jurisdiction to issue the writ. The prohibition contained in the Act of 1807 against its *issue* was in effect repealed by the Act of 1836, which forbade only its *execution*. The former act was held to be superseded by the latter: Winder v. Smith, 6 W. & S. 424.

The practice of the sheriff's office of executing writs of *ca. sa.* is now, and always has been, to have the deputy in charge call upon the defendant for a disclosure of property before attempting execution of the writ, and if disclosure is made, to refrain from executing the writ. If this is done, there can be no action against the sheriff.

The rule to issue the *ca. sa.* alone is made absolute.